IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRIS J. FERSTL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:16-CV-113 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| **Defendant.** | ) |

### REPORT AND RECOMMENDATION

Plaintiff Chris J. Ferstl ("Ferstl") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Ferstl alleges that the Administrative Law Judge ("ALJ") erred by failing to assign proper weight to the opinion of his treating physicians, developing a residual functional capacity ("RFC") which is not supported by substantial evidence, and improperly assessing his credibility. I conclude that the ALJ's opinion is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Ferstl's Motion for Summary Judgment (Dkt. No. 12), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 14.

### STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Ferstl failed to demonstrate that he was disabled under the

---

[1] Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Ferstl filed for DIB on February 22, 2012, claiming that his disability began on May 14, 2007. R. 71, 164–167. Ferstl was last insured for DIB on December 31, 2010, and thus, he must establish that he became disabled before this date. R. 14. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 94–98, 101–103. On September 9, 2014, ALJ Geraldine H. Page held a hearing to consider Ferstl's disability claim. R. 33–70. Ferstl was represented by an attorney at the hearing, which included testimony from Ferstl and vocational expert Asheley Wells. Id.

On October 28, 2014, the ALJ entered her decision analyzing Ferstl's claim under the familiar five-step process,[3] and denying Ferstl's claim for disability. R. 14–27. The ALJ found

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the

that Ferstl suffered from the severe impairments of systemic lupus erythematosus ("SLE" - lupus), possible Sjogren's syndrome and arthritis of the hands. R. 16. The ALJ further found that Ferstl retained the RFC to perform light work, such that he could occasionally crawl, kneel, balance, stoop, crouch and climb ramps and stairs, he could frequently reach overhead, handle, finger and feel, and he should avoid concentrated exposure to extreme temperatures, pulmonary irritants, hazardous machinery, unprotected heights, and climbing ladders, ropes and scaffolds. R. 19. The ALJ determined that Ferstl could not return to his past relevant work as a carpenter (R. 26), but that he could work at jobs that exist in significant numbers in the national economy, such as mail clerk, assembler and cashier. R. 27. Thus, the ALJ concluded that Ferstl was not disabled. Id.

Ferstl requested that the Appeals Council review the ALJ's decision, and on February 11, 2016, the Appeals Council denied Ferstl's request for review. R. 1–5. This appeal followed.

## ANALYSIS

### Treating Physician Opinion

Ferstl argues that the ALJ improperly determined that the opinion of his treating physicians Robert Patten, M.D., and Catherine Daniel, M.D., were entitled to little weight. The ALJ reviewed opinions from Dr. Patten, Dr. Daniel, Dr. Cruz and from two state agency reviewing physicians when assessing Ferstl's RFC. The ALJ gave little weight to the opinions of Drs. Patten and Daniel that Ferstl was incapable of gainful employment, some weight to the opinion of Dr. Cruz that Ferstl was capable of light work, and some weight to the state agency physicians' findings that Ferstl was capable of light work. R. 25. The ALJ determined that despite Ferstl's physical limitations, he is capable of performing a range of light work. R. 19.

---

claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, No. 2:09-cv-1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam).

While an ALJ is under no obligation to accept any medical opinion, he or she must explain the weight afforded to each opinion. See Monroe v. Colvin, 826 F.3d 176, 190–91 (4th Cir. 2016). If the ALJ provides a sufficient explanation, the court "must defer to the ALJ's assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). However, if the ALJ does not adequately explain the weight given to each medical

opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Monroe, 826 F.3d at 190.

The Fourth Circuit recently clarified the ALJ's duty to provide a sufficient explanation of the weight given to a medical opinion. The ALJ must provide a narrative discussion describing how the evidence in the record supports each of her conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189. The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190. "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case so that the ALJ can adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2016)). Here, the ALJ provided a detailed explanation of the weight given to the opinions of Drs. Patten and Daniel, which allows for meaningful review and is supported by substantial evidence.

The relevant time period is from when Ferstl first claimed disability, May 14, 2007, through his date last insured, December 31, 2010[4]. The evidence of record shows that Dr. Patten treated Ferstl on July 24, 2006 for viral gastroenteritis and saw him multiple times through 2007 for sinus infections and various illnesses. R. 292–293, 746, 295–296, 752. On May 8, 2007, Dr. Patten diagnosed Ferstl with arthralgia, lymphadenitis and splenomegaly. R. 255. Physical

---

[4] The relevant time period begins on the date the application is filed and ends the last date the claimant is insured. See Titles II & Xvi: Onset of Disability, SSR 83-20 (S.S.A. 1983).

5

examination revealed Ferstl suffered from an enlarged spleen, maculopapular rash on his extremities and synovial swelling of his hands and knees. R. 256. Ferstl continued to see Dr. Patten through 2014. During the relevant time frame of May 14, 2007 through December 31, 2010, only once did Ferstl report consistently feeling ill due to aches. R. 314, 317, 336. He denied malaise, fatigue, joint pain, swelling or stiffness, myalgia, back pain and weakness. R. 298, 302, 318. Ferstl's physical examinations were also unremarkable. Dr. Patten consistently found Ferstl had a full range of motion, no joint pain or swelling, and a non-tender back. R. 299, 303, 306, 319, 337. On September 27, 2013, Dr. Patten reported that Ferstl could occasionally lift 10 pounds, could sit less than 2 hours in an 8-hour workday, must periodically alternate sitting and standing to relieve pain, was limited in both upper and lower extremities and would likely be absent from work more than 3 times per month. R. 478–481. Dr. Patten stated his findings were supported by Ferstl's diagnosis of lupus, his chronic fatigue, and arthritis of his joints, hands, wrists, elbows, knees and hips. R. 479.

Dr. Daniel's treatment notes during the relevant time demonstrate that Ferstl had normal musculature, only one instance each of posterior spine tenderness, hand joint swelling and tenderness, diffuse tender points, and mild tenderness in his wrists and hand joints, no joint deformity, normal extremities without edema, normal strength, good range of motion, no synovitis and a normal gait. R. 277–279, 881, 907, 922, 941, 973, 991, 1013–1014, 1063, 1084–1085.

Dr. Daniel regularly treated Ferstl's lupus during the relevant period. Dr. Daniel's records show that in February 2008, Ferstl experienced a mild flare (R. 882), and in March 2008, Ferstl was doing well on medication. R. 907. In May 2008, Ferstl's lupus was in remission with medication (R. 942), and in September 2008, his lupus remained in "good control" due to his

6

treatment regimen. R. 974. Ferstl continued "doing well without clinical features of disease activity" in December 2008 (R. 992), and in September 2009, Dr. Daniel doubted he would have more "extensive disease involvement". R. 1063. Ferstl's lupus was in remission in April 2010 (R. 279), but in July 2010, Ferstl had mild fatigue with no evidence of a major flare. R. 277. In October 2010, Ferstl had intermittent joint swelling. R. 276. In August 2014, Dr. Daniel reported Ferstl would be able to lift 10 pounds occasionally, lift less than 10 pounds frequently, and stand or sit for only a 2 hour period in an 8-hour workday. R. 836. Dr. Daniel also noted that Ferstl had upper and lower extremity limitations and would never be able to climb, balance, crouch, crawl or stoop. R. 837.

The ALJ reviewed the treatment notes and opinions of Drs. Patten and Daniel, and gave their conclusions little weight. She stated:

> Even though Dr. Patten and Dr. Daniel treated the claimant, their opinions are given little weight because they are not supported by the medical evidence of record, and they are contradicted by the claimant's many statements that he was working more hours and at greater exertional levels than the limits his treating practitioners placed on him. As mentioned above, at least 5 times, the claimant reported working anywhere from 20 to 40 hours per week since May 2007. He worked as a carpenter, so this work was likely at least medium exertional work, as was his work before the alleged onset date. At one point, he mentioned he was lifting "heavy things" at work. For a carpenter, this very likely means things weighing over 10 to 15 pounds that his doctors opined were his limitations. Moreover, the medical evidence of record shows that the claimant's lupus improved with treatment by early 2008. He had occasional flare-ups, but these were generally short-lived, and the claimant usually reported that his medications were generally helpful.

R. 25.

The ALJ sufficiently explained her determination to give the opinions of Drs. Patten and Daniel little weight, and such determination is supported by substantial evidence in the record. The ALJ addressed the treatment Ferstl received from Drs. Patten and Daniel and the fact that

7

Ferstl had periods when his lupus flared and he experienced more medical problems, but likewise had periods where his lupus was under control while on medication. Neither doctor restricted Ferstl's activities to the same extent Ferstl claims he was restricted. Indeed, the records from these doctors do not document the level of restrictions they found as to Ferstl's ability to work. The opinions of Drs. Patten and Daniel are also contradicted by the state agency physicians' findings and Ferstl's work as a carpenter during the relevant period.

The ALJ also analyzed the opinion of Dr. Edwin Cruz, an independent medical expert, who reviewed Ferstl's records in 2014 and concluded that Ferstl's lupus was in remission and he was capable of light work. R. 25, 804. The ALJ gave his opinion some weight, finding Dr. Cruz's opinion was supported by the medical evidence of record. R. 25. The ALJ then analyzed the opinions of state agency evaluators Brian Strain, M.D., and Jeanne Buyck, Ph.D., dated July 26, 2012, who reviewed the evidence and determined that Ferstl was capable of performing a range of light work and had no severe mental impairments. R. 75–79. Upon reconsideration, state agency physicians Linda Dougherty, Ph.D. and R.S. Kadian, M.D., reviewed Ferstl's records and determined that he had no severe mental impairments and was capable of a range of light work involving occasional climbing of ramps and stairs, stooping, kneeling, crouching and crawling. R. 88–91. The ALJ recognized that the state agency physicians are not treating or examining doctors, but are experts in all phases of disability evaluation. R. 25. The ALJ gave their opinions some weight, finding that they applied to a portion of the period of disability under consideration. R. 25–26.

Overall, the ALJ's assessment of the conflicting medical opinions in the record enables the court to meaningfully review the weight given to each opinion and the ALJ's ultimate conclusions. The ALJ gave specific weight to each opinion and provided additional explanation

as to the weight assigned to each opinion. The ALJ's explanation of the degree of weight she gave the conflicting medical opinions includes a "narrative discussion describing how the evidence supports each conclusion ...." Mascio, 780 F.3d at 636. Thus, the ALJ sufficiently explained her reasons for giving little weight to the opinions of Drs. Patten and Daniel, and such reasons are supported by substantial evidence in the record.

## RFC

Ferstl argues that the ALJ's RFC is not supported by substantial evidence. He argues the ALJ failed to perform a function-by-function analysis under Social Security Ruling ("SSR") 96-8P[5] and consequently failed to pose proper hypothetical questions to the vocational expert. Pl. Br. Summ. J. p. 12; see Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878, at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15–16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

9

(emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

Here, the ALJ's discussion of Ferstl's limitations satisfies the requirements of SSR 96-8P. The ALJ considered both medical and non-medical evidence in assessing Ferstl's RFC and provided the narrative discussion required by the regulations. Specifically, the ALJ considered Ferstl's treatment for lupus during the relevant time frame, as well as Ferstl's allegations regarding his illness. R. 19–26. The ALJ noted that "despite complaints of severe pain", Ferstl "reported working, raising a grandchild, and fishing…" R. 24. As the ALJ states, Ferstl "worked regularly after his alleged onset date and before his date last insured…[a]t one point, he was working 8 to 10 hours per day, 4 days per week, which is more consistent with fulltime work." R. 23. The ALJ also found that Ferstl has not "consistently complained of and sought treatment for symptoms related to his alleged impairments. The claimant often stated that he was doing well on his medications and only complained of mild symptoms…" R. 24. In terms of the medical evidence of record, the ALJ determined that it shows Ferstl's medications "usually controlled his symptoms. Furthermore, he was able to work significantly even when he had symptoms." R. 25–26. Indeed, as discussed earlier, Ferstl's treating physicians found his lupus to be well-controlled by medications. Further, neither the state agency physicians nor the independent medical examiner restricted Ferstl to more limited work than that found in the ALJ's RFC.

The ALJ considered the medical opinions, Ferstl's testimony, and the objective record and explained the basis for her ruling. Thus, the court is capable of meaningfully reviewing the

RFC.  See Taylor v. Astrue, No. 11-cv-32, 2012 U.S. Dist. LEXIS 11307, at *17, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (noting that while SSR 96-8 requires an ALJ to consider the evidence presented on a function-by-function basis, it does not require the ALJ to produce such a detailed statement in writing, but rather is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions); see also Monroe, 826 F.3d at 189 (4th Cir. 2016) (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) (finding that "[a] necessary *predicate* to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.").  Further, the ALJ did not err when presenting a hypothetical scenario based on Ferstl's established limitations.  See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (holding that hypothetical questions are adequate if they reflect a RFC for which the ALJ had substantial evidence). It is not the Court's role to weigh the conflicting evidence or substitute its judgment for that of the ALJ.  Substantial evidence supports the RFC finding.

## **Credibility Assessment**

Ferstl asserts that the ALJ conducted an improper credibility[6] assessment by not performing a two-step credibility analysis as set forth in the regulations.  Ferstl argues that the

---

[6] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16–3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16–3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.
   Here, SSR 16–3p was issued long after the ALJ's consideration of Ferstl's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96–7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

11

ALJ incorrectly assumed he was engaging in substantial gainful employment and failed to specifically address his allegations regarding his difficulty sitting and standing, his need to lie down and rest, and his need for others to help him with his activities of daily living. Pl. Br. Summ. J. p. 25–28.

Ferstl's subjective allegations of pain and limitations are not conclusive. Rather, under the two-step credibility analysis, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Ferstl met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ must then evaluate the intensity and persistence of the claimed symptoms and their effect upon Ferstl's ability to work. Id. at 594–95.

Here, the ALJ followed the required two step process, and determined first that there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce Ferstl's symptoms, such as pain. R. 23. See SSR 96–7p, at *1. The ALJ set forth Ferstl's subjective complaints about the intensity, persistence and limiting effects of his symptoms in detail in her opinion. R. 19–24. In step two, the ALJ concluded that Ferstl's statements concerning the intensity, persistence and limiting effects of his symptoms are partially credible. R. 23. The ALJ determined that Ferstl's statements about his symptoms and limitations are not consistent with the objective medical evidence and other evidence in the record. R. 23–24. Specifically, the ALJ set forth Ferstl's medical treatment history in detail and noted that the "medical evidence of record does not support the severity" of Ferstl's alleged symptoms, stating:

---

However, I note that the methodology required by both SSR 16–3p and SSR 96–7p are quite similar. Under either, the ALJ is required to consider Ferstl's report of his own symptoms against the backdrop of the entire case record; in SSR 96–7p, this resulted in a "credibility" analysis, in SSR 16–3p, this allows the adjudicator to evaluate "consistency."

> First, the claimant worked regularly after his alleged onset date and before his date last insured. The undersigned acknowledges that some limited part-time work can fall below substantial gainful activity levels and is not inconsistent with a finding of disability, but the claimant worked substantial amounts and then denied all of this while under oath at the hearing. As mentioned specifically in the above summary of the medical evidence of record, the claimant often told his treating practitioners that he was working. He often stated that he worked 20 or 20 to 30 hours per week. At one point, he was working 8 to 10 hours per day, 4 days per week, which is more consistent with fulltime work. The claimant never reported this work to the Social Security Administration as he was supposed to, and it was not reported in his earning records.
>
> The claimant was given a chance to explain these statements in the medical evidence of record when he appeared at the hearing, but he continued to deny substantial work activity when given many chances to explain. When asked why his two main treating practitioners would repeatedly record new accounts of him working, he admitted only to helping a friend a few hours per week but not receiving any pay for it. However, the specific statements about hours worked in the medical evidence of record shows that this is clearly not the work to which they are referring. The claimant later insisted that he did not know why his treating practitioners would write such notes. Such notes were independent at different appointments. They were not one statement that was recorded in the "social history" section of the notes and then copied on each treatment date. The undersigned finds the claimant's explanation unconvincing and implausible. He has presented no cogent evidence of why his treating practitioners would write such statements about his work activity unless he had actually made them. Such inconsistent testimony is not dispositive of this case, but it diminishes the claimant's credibility and shows that he is likely capable of doing more than he alleges.

R. 23. Contrary to Ferstl's assertions, the ALJ did not find Ferstl was engaging in substantial gainful activity. Instead, the ALJ noted Ferstl's documented work history was inconsistent with his statements and therefore relevant to the credibility analysis.

The ALJ also noted that Ferstl's records reveal that medications have been relatively effective in controlling his symptoms. R. 24. The ALJ then stated that claimants who suffer from disability level impairments will "typically consistently complain of and seek treatment for

13

symptoms related to such impairments when seeking medical treatment after the alleged onset date." Id. However, the ALJ found that Ferstl "has not consistently complained of and sought treatment for symptoms related to his alleged impairments. The claimant often stated that he was doing well on medications and only complained of mild symptoms…as opposed to the severe symptoms he alleged at the hearing." Id. The ALJ discussed Ferstl's treatment overall, finding it "essentially routine and/or conservative in nature". Id.

It is apparent from the decision that the ALJ reviewed with detail the medical record regarding Ferstl's impairments and measured his statements about the severity of his symptoms and limitations against the objective medical evidence. It is for the ALJ to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). The ALJ's evaluation of Ferstl's symptoms is supported by substantial evidence, and the court will not disturb it.

## **CONCLUSION**

For the reasons set forth above, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Ferstl's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the

parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

                    Entered: June 30, 2017

                    *Robert S. Ballou*
                    Robert S. Ballou
                    United States Magistrate Judge